UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SANDRA BETH SCHWARCZ, D.O,

    Plaintiff,

vs.

WALT DISNEY PARKS AND
RESORTS U.S., INC. a Florida
Corporation,

    Defendant.
_____/

CASE NO.: 6:25-cv-640

INJUNCTIVE RELIEF SOUGHT

## **COMPLAINT**

Plaintiff SANDRA BETH SCHWARCZ, D.O. ("DR. SCHWARCZ"), by and through the undersigned counsel, hereby files this Complaint and sues WALT DISNEY PARKS AND RESORTS U.S., INC. ("DISNEY"), for declaratory and injunctive relief, attorneys' fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 et. seq., and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

## **JURISDICTION AND VENUE**

1. This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 343 for DR. SCHWARCZ'S claims arising under Title 42 U.S.C. § 12182 et. seq., based on DISNEY'S violations of Title III of the ADA.  *See also,* 28 U.S.C. §§ 2201, 2202, as well as the 2010 ADA Standards.

2.     Venue is proper in this Court, Orlando Division, pursuant to 28 U.S.C. § 1391(B) and Internal Operating Procedures for the United States District Court For the Middle District of Florida in that all events giving rise to the lawsuit occurred in Orange County, Florida.

## PARTIES

3.     DR. SCHWARCZ is *sui juris* and is a resident of the State of Pennsylvania.

4.     Upon information and belief, DISNEY is the lessee, operator, owner and/or lessor of the Real Property, Disney's Yacht Club Resort ("Resort"), which is subject to this suit, and is located at 1700 Epcot Resorts Blvd, Lake Buena Vista, FL 32830, ("Premises"). DISNEY is also the owner of the improvements where Premises is located.

5.     DISNEY is authorized to conduct, and is in fact conducting, business within the State of Florida.

6.     DR. SCHWARCZ is an individual with permanent disabilities. One being Postural Orthostatic Tachycardia Syndrome ("POTS"), a neurological condition affecting the autonomic nervous system's regulation of pulse and blood pressure and which causes one's heart to beat faster than normal when transition from lying to sitting or sitting to standing up.

7.     POTS is exacerbated by warm or hot temperatures and, as such, requires that DR. SCHWARCZ recover in a cool temperature.

8.     DR. SCHWARCZ'S other disability is Mast Cell Activation Syndrome which makes her hyper-allergic.

9.     DR. SCHWARCZ also uses a mobility scooter.

10. DR. SCHWARCZ and her family have been visiting Disney's Yacht Club Resort two to three times a year since 2009 prior to these disabilities which arose in or around 2012 .

11. In 2016 and thereafter, prior to each visit, DR. SCHWARCZ contacted the Resort to review her need for accommodations. For years, the staff and management worked with DR. SCHWARCZ to accommodate her needs so that she could also enjoy the Resort just like all the other guests.

12. However, this changed in October 2022, when DR. SCHWARCZ began experiencing resistance from DISNEY to continue the accommodations.

13. On October 29, 2022, when DR. SCHWARCZ arrived at the Resort, she discovered that the necessary adjustments had not been made to the thermostat in her room. She requested a technician to make the appropriate changes.

14. Duty Manager Lynn (last name unknown) refused to allow for the adjustments, which requires the temperature sensor to be turned off, a task that historically has taken less than ten minutes to accomplish.

15. The Duty Manager informed DR. SCHWARCZ that the room could not possibly reach the lower temperature she wanted even though it was the same room DR SCHWARCZ occupied on prior visits with necessary adjustments made.

16. The Duty Manager provided other incredulous reasons including that "Disney was going greener" and was not going to make any further accommodations and if they were needed, guests would be told to go elsewhere.

17. Duty Manager Lynn then told DR. SCHWARCZ that if she didn't like the temperature in the room that she was free to leave the hotel and never return.

18. As a result of the room temperature not being properly adjusted, DR. SCHWARCZ woke at around 5:30 a.m., well before her alarm was set to go off, with her heart racing.

19. She alerted management of her medical condition and the temperature in her room was adjusted. Given that management was now fully aware of the hazards in not providing this accommodation, DR. SCHWARCZ reasonably believed she would not have any further difficulty obtaining the accommodation.

20. DR. SCHWARCZ'S next scheduled trip to the Resort was in May 2023. Prior to arriving she received a phone call and email correspondence from an employee of the Resort, Donna l/n/u, stating she worked in some "executive" capacity for DISNEY.

21. A later email revealed that Donna may have actually been Joan Martin.

22. DR. SCHWARCZ had never been contacted by the Resort or DISNEY in this manner. Previously she had been contacted by a few select people she was familiar with at the Resort to make the necessary arrangements. Her behavior and calls were bizarre, refusing even to provide a last name.

23. Donna and/or Ms. Martin called DR. SCHWARCZ and advised that she was going to meet with Kim Marrinaccio (former GM of the Resort) to discuss the air conditioning situation and that she would get back to DR. SCHWARCZ.

24. A couple days before DR. SCHWARCZ was to depart for her drive to the Resort, Donna and/or Ms. Martin emailed DR. SCHWARCZ regarding her "air conditioning requests."

25. Rather than confirming that the reasonable accommodation would be made, DR. SCHWARCZ was advised that the request was noted in the booking but that it could not be guaranteed that the adjustment to the temperature could be done.

26. DR. SCHWARCZ immediately emailed her contact at the Resort, Lisa Elletson, sharing that she was due to start her drive to Florida soon but that she could not leave without knowing that they would in-fact make the air conditioning accommodation.

27. DR. SCHWARCZ was told that there were no such notations on the booking and that they had never been contacted by Donna and/or Ms. Martin.

28. Whomever Donna and/or Ms. Martin may have been; this person was certainly attempting to dissuade DR. SCHWARCZ from coming to the Resort.

29. DR. SCHWARCZ's final stay at the Resort was the May 2023 trip.

30. When she arrived, the temperature and settings in the room had not been adjusted.

31. As she had in the past, DR. SCHWARCZ requested a technician make the adjustment. Unlike her prior experiences, this request had to be made several times before someone arrived.

32. The person who arrived stated that there were no technicians on duty. DR. SCHWARCZ and her mother were able to persuade this person to attempt to make the adjustments and, with guidance from DR. SCHWARCZ and her mother, the adjustments were made.

33. On May 26, 2023, DR. SCHWARCZ returned to the Resort to find that there was no handicap parking spot available. She asked one of the valet attendants what options were available.

34. In the past, DR.SCHWARCZ and her travel companions– her 1-year-old autistic son and her 72-year old mother -- were told that self-parking in the valet lot was permissible. This time, however, they were instructed to park in the regular lot which was a far greater distance from the Resort.

35. A manager appeared to watch DR. SCHWARCZ unload her scooter, her son, and wait for the car to be parked.

36. On May 27, 2023, DR. SCHWARCZ drove to Animal Kingdom while Maria (the Helper) rode on one of the DISNEY buses with DR. SCHWARCZ'S mobility scooter.

37. Maria ended up stuck on the bus with the scooter because the ramp was broken and the driver did not have the tool to manually lower the ramp. Later that day, the same bus with the same ramp problem was still in circulation.

38. DR. SCHWARCZ spoke with Ashley Mallo about the difficulties she had been experiencing in obtaining accommodations. She also shared her perception – and discomfort – of being followed and watched by staff while at the Resort.

39. Ms. Mallo provided parking options to DR. SCHWARCZ and confirmed her perception of being followed and watched, commenting that: "it's not the same old Disney anymore….Things are very different unfortunately."

40. A few hours after her conversation with Ms. Mallo, DR. SCHWARCZ was shockingly issued a Trespass Warning banning her not only from the Resort but from every property and facility owned or managed by DISNEY in Florida.

41. As DR. SCHWARCZ and her family were preparing to leave the resort for dinner, DR. SCHWARCZ's mother and son were approached by several law enforcement officers asking for DR. SCHWARCZ, who was still in the room getting ready.

42. After explaining, DR. SCHWARCZ's mother and son were escorted to their room and, in the presence of DR. SCHWARCZ, the Trespass Warning was issued.

43. DR. SCHWARCZ and her family were told they had one hour to gather her belongings and vacate the Resort.

44. When DR. SCHWARCZ inquired into why this was being issued, she was told it was "general conduct" with no specifics or elaborations. The only reason this Trespass Warning was issued is that DISNEY simply no longer wanted to make the effort to accommodate DR. SCHWARCZ'S medical needs.

45. Months later when DR. SCHWARCZ made an effort to remove the Trespass Warning, she was told that it would not be removed because she had assaulted a cast member the day before she was removed from the Resort.

46. This completely false accusation was shocking to DR. SCHWARCZ as she has never assaulted anyone and had never been notified of this claim either prior to or at the time the Trespass Warning was issued.

47. Inconsistent with such an allegation, DR. SCHWARCZ was permitted to go to DISNEY'S Animal Kingdom Park the next day, for one last time, and spent several hours there without incident.

48. Title III of the Americans with Disabilities Act ("ADA") grants that no individual shall be discriminated against based on disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation…." 42 U.S.C. sec. 12182(a).

49. DISNEY and the Resort are places of public accommodation for purposes of the ADA.

50. At the time of DR. SCHWARCZ'S visit to the Resort in May 2023, she suffered from a "qualified disability" under the ADA, and required accommodations in order fully utilize the Resort.

51. She was, instead, denied full and equal access and full and equal enjoyment of the facilities and amenities of the Resort.

52. DR. SCHWARCZ, in her individual capacity, will absolutely return to the Resort, if permitted, then avail herself of the services offered when DISNEY makes the necessary accommodations.

53. Leaving aside being subject to arrest should DR. SCHWARCZ return to the Resort or any DISNEY facility or property, she is continuously aware of the desire to cease the accommodations and that it would be a futile gesture to return to the Resort.

54. DR. SCHWARCZ has suffered, and will continue to suffer, direct and indirect injury as a result of DISNEY's discrimination until DISNEY is compelled to comply with the requirements of the ADA.

55. DR. SCHWARCZ would like to be able to be a patron of the Resort and DISNEY properties and facilities in the future and be able to enjoy the goods and services that are available to the able-bodied public.

56. She is currently precluded from doing so as a result of DISNEY's discriminatory conduct as described herein.

57. On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements.

58. Congress found, among other things, that:

a. some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b. historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c. discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

d. individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

e. the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1)-(3),(5) and (9).

59. Congress explicitly stated that the purpose of the ADA was to:

   a. provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

   b. provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

   c. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

U.S.C. § 12101(b)(1)(2) and (4).

60. Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, the Resort and the DISNEY properties and facilities are places of public accommodation covered by the ADA by the fact that they provide services to the general public and must be in compliance therewith.

61. DISNEY has discriminated and continues to discriminate against DR. SCHWARCZ by denying her access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Resort and the other DISNEY properties and facilities.

62. DR. SCHWARCZ has retained the undersigned counsel and agreed to a reasonable fee for legal services.

63. All conditions precedent have been satisfied or waived.

## COUNT I

## DISCRIMINATION – AMERICANS WITH DISABILITIES ACT

64. DR. SCHWARCZ adopts and re-alleges the allegations stated in paragraphs 1 through 62 above as if fully stated herein.

65. DISNEY is in violation of 42 U.S.C. § 12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against DR. SCHWARCZ as a result of the above-mentioned actions.

66. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant DR. SCHWARCZ's injunctive relief, including an order to make the necessary accommodations at the Resort and to lift the Trespass Warning, to make the Resort and DISNEY properties and facilities readily accessible to and useable by DR. SCHWARCZ.

WHEREFORE, DR. SCHWARCZ demands judgment against DISNEY and requests the following injunctive and declaratory relief:

1. That this Court declares that the Resort owned, operated and/or controlled by DISNEY is in violation of the ADA;

2. That this Court enter an Order requiring DISNEY to lift the Trespass Warning;

3. That this Court enter an Order requiring DISNEY and the Resort make the necessary accommodation such that they are accessible to and usable by DR. SCHWARCZ, an individual with disabilities, to the full extent required by Title III of the ADA;

4. That this Court enter an Order directing DISNEY to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for

such reasonable time so as to allow DISNEY to undertake and complete corrective procedures;

5. That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the DR. SCHWARCZ; and,

6. That this Court award such other and further relief as it may deem necessary, just and proper.

## COUNT II

## INTERFERENCE, COERCION, OR INTIMIDATION

## AMERICANS WITH DISABILITIES ACT

67. DR. SCHWARCZ adopts and re-alleges the allegations stated in paragraphs 1 through 62 above as if fully stated herein.

68. The ADA provides for the following:

Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S. Code § 12203(b).

69. DISNEY, through the above-mentioned actions, interfered with, coerced and intimidated DR. SCHWARCZ for no reason other than her attempt to secure reasonable accommodations for her disabilities.

70. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant DR. SCHWARCZ's injunctive relief, including an order to make the necessary

accommodations at the Resort and to lift the Trespass Warning, to make the Resort and DISNEY properties and facilities readily accessible to and useable by DR. SCHWARCZ.

71. WHEREFORE, DR. SCHWARCZ demands judgment against DISNEY and requests the following injunctive and declaratory relief:

1. That this Court declares that the Resort owned, operated and/or controlled by DISNEY is in violation of the ADA;

2. That this Court enter an Order requiring DISNEY to lift the Trespass Warning;

3. That this Court enter an Order requiring DISNEY and the Resort make the necessary accommodation such that they are accessible to and usable by DR. SCHWARCZ, an individual with disabilities, to the full extent required by Title III of the ADA;

4. That this Court enter an Order directing DISNEY to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow DISNEY to undertake and complete corrective procedures;

5. That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the DR. SCHWARCZ; and

6. That this Court award such other and further relief as it may deem necessary, just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demand trial by jury of all issues so triable.

/s/ Arthur Schofield, Esq.
Arthur Schofield, Esq.
Florida Bar No. 984434
Primary Email: aschofield@flalabor.com
Secondary Email: rmain@flalabor.com
ARTHUR T. SCHOFIELD, P.A.
Via Jardin Building
330 Clematis Street, Suite 207
West Palm Beach, Florida 33401
Telephone: (561) 655-4211
Facsimile: (561) 655-5447

ATTORNEY FOR PLAINITFF